KAUFHOLD GASKIN LLP
STEVEN S. KAUFHOLD (SBN 157195)
Email: SKaufhold@KaufholdGaskin.com
388 Market St., Suite 1300
San Francisco, CA 94111
Telephone: 415-445-4621
Facsimile: 415-874-1071

Attorneys for Respondent
Phyto Tech Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LIU LUWEI, an individual, and LV DEZHENG, an individual,<br><br>Petitioners,<br><br>vs.<br><br>PHYTO TECH CORP., a California Corporation,<br><br>Respondent. | Case No.: 18-cv-02174-JFW-GJS<br><br>**OPPOSITION OF RESPONDENT PHYTO TECH CORPORATION TO PETITION TO ENFORCE FOREIGN ARBITRATION AWARD**<br><br>Petition Filed: March 15, 2018 |

## I. INTRODUCTION

Federal District Courts have no obligation to permit enforcement of foreign arbitration awards against American companies in the United States. Instead, Courts must carefully assess whether enforcement is available pursuant to the 1958 New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention") and, if so, whether enforcement is consistent with Article V of the New York Convention and with the due process rights of the responding party.

This is particularly true where, as here, the arbitration award is defective on its face and Chinese counsel for Petitioners admits, under penalty of perjury, that the purported agreement dated February 5, 2015 and recognized by the arbitration award "<u>was revised and re-executed on February 6, 2015 and March 5, 2015 in order to comply with regulatory requirements in the People's Republic of China.</u>"  Affidavit of Wing Keung Clement Ngai ("Ngai Decl."), ¶ 5 (emphasis added). Moreover, it is undisputed that the February 5, 2015 form of agreement ordered to be enforced by the arbitration award did not even specify Respondent Phyto Tech Corp ("Phyto Tech") as a party, much less a signatory, to that agreement.

After correctly recognizing and finding that Respondent Phyto Tech did already pay 10,000,000 RMB out of the total purchase price for the share transfer concerned, the arbitration award went off the rails by "inventing" and "inserting" Respondent Phyto Tech Corp as the share transferee party to the February 5, 2015 form of agreement even though Respondent Phyto Tech is not listed as a party to that agreement and never signed that agreement.  The panel also disregarded the fact that the February 5, 2015, unlike the later agreements, was not filed with required Chinese government agencies as per Chinese laws governing the share transfer of foreign invested companies in China such as Teejoy (Shanghai) Biotechnology Co., Ltd. ("Teejoy").

After creating itself this new "agreement", the panel then held the purchase price of the share to be 46,000,000 RMB, a full 12,000,000 RMB higher than the 34,000,000 RMB share price in the "revised and re-executed" valid February 6, 2015 and March 5, 2015 agreements that Respondent Phyto Tech Corp did sign and that were approved by the Chinese government.

   Accordingly, Respondent Phyto Tech, a California Corporation, objects to the pending Petition, and to enforcement of the contested arbitration award, for four important reasons.

   <u>First</u>, as noted above, Phyto Tech was not a party or a signatory to the February 5, 2015 purported agreement. Instead, the parties to that agreement were Petitioners and "Domestic or Foreign-funded Enterprise controlled actually by STEVEN CHEN." For this reason, to the extent that the award is based on enforcement of the February 5, 2015 agreement and the award was made based on the dispute resolution provisions of that agreement, Petitioners may not seek enforcement against Phyto Tech in the United States under the New York Convention because the New York Convention applies only where there is an agreement in writing "in an arbitral clause in a contract or an arbitration agreement, <u>signed by the parties</u> or contained in an exchange of letters or telegrams." New York Convention, Article II (emphasis added). Accordingly, while Petitioners may seek enforcement of the disputed award in China, the New York Convention does not provide a basis for enforcement of an award in the United States based on the February 5, 2015 agreement against a non-party to that agreement, Phyto Tech.

   <u>Second</u>, even if the New York Convention is found to apply here, enforcement should be denied under the New York Convention because, as Petitioner's counsel has admitted, the February 5, 2015 form of agreement did not comply with applicable Chinese law. Under Art. V(2)(b) of the New York Convention, enforcement of purported February 5, 2015 agreement against Phyto Tech would clash with Chinese law and be improper. Again, Petitioners are not without a remedy. They remain free to seek enforcement of the terms of the revised February 6, 2015 and March 5, 2015 agreements which include Phyto Tech as a party and signatory and which their own counsel acknowledge were "revised and re-executed on February 6, 2015 and March 5, 2015 in order to comply with regulatory requirements in the People's Republic of China." Ngai Decl., ¶ 5.

   <u>Third</u>, enforcement should be denied under the New York Convention because the arbitration process applied in the Chinese proceedings violated Phyto Tech's right to due process in several respects in violation of Article V(1)(b). Specifically, the arbitration panel permitted notice to be given in Chinese only to Phyto Tech, rejected Petitioners attempt to seek signature

verification with respect to the March 5, 2015 agreement, and also refused to let Respondents receive signature verification with respect to the February 5, 2015 agreement.

The arbitration panel also refused to permit cross-examination with respect to the February 5, 2015 agreement and improperly relied on unverified e-mails from Shilu Wang when Wang was not an authorized representative of Phyto Tech. Phyto Tech or Teejoy never had control and still has no control over the domain (www.tee-joy.com) or the server of this domain associated with these unverified emails. Cumulatively, these errors led the arbitration panel to unlawfully purport to enforce the February 5, 2015 agreement.

Fourth, Petitioners' own interpretation of the February 5, 2015 agreement at Section 16.4 reveals that the agreement is subject to amendment as follows: "[a]ny amendment to this Agreement shall be made in writing, and become effective after it is signed by the duly authorized representatives of the parties and approved in accordance with the laws and regulations (if applicable)." Ngai Decl., Ex. 2, Section 16.4. As revealed in the Verified Petition, "[t]he agreement was revised and re-executed on February 6, 2015 and March 15 in order to comply with regulatory requirements in the People's Republic of China." Verified Petition to Recognize, Confirm and Enforce Foreign Arbitration Award ("Petition"), ¶ 10; *see also,* Ngai Decl., ¶ 5. These "revise and re-executed" versions of the February 5, 2015 agreement satisfy both requirements for an amendment under Section 16.4. As a matter of due process, any enforcement of the February 5, 2015 agreement must include the revised pricing set forth in the later "revised and re-executed" versions agreed to by the parties to this action.

The arbitration panel's award itself impermissibly manufactures a "new" agreement with different elements of different agreements – rather than determining whether the February 5, 2015 agreement, the February 6, 2015 agreement or the March 5, 2015 agreement is controlling – and, in doing so, the panel exceeds the scope of issues submitted for arbitration. New York Convention, Article V(1)(c). Because creation of that "new" agreement – rather than determining which of the three existing agreements controls – violates "most basic notions of morality and justice" for any Country applying modern contract law, Article V(2)(b) of the New York Convention also precludes enforcement of the award.

In sum, both the facts and the law require denial of the Petition as presented. Here are the facts.

## II. STATEMENT OF FACTS

On February 5, 2015, a *Shareholding Assignment Agreement* ("February 5, 2015 agreement") was entered in by and between Petitioners Liu Luwei and Lv Dezheng and "Domestic or Foreign-fund Enterprise controlled actually by STEVEN CHEN." Ngai Decl., Ex. 2. The February 5, 2015 agreement did not name Respondent Phyto Tech Corp. as a party and did not even mention Phyto Tech Corp.'s name. *Id.* The consideration under the February 5, 2015 agreement was 46,000,000 RMB. *Id.*, Article 2.2. Finally, the February 5, 2015 agreement contained an express provision that permitted amendment ". . . in writing, and become effective after it is signed by the duly authorized representatives of the parties and approved in accordance with the laws and regulations (if applicable)." *Id.*, Article 16.4.

On February 6, 2015, the prior February 5, 2015 agreement was "revised and re-executed on February 6, 2015 and March 5, 2015 in order to comply with regulatory requirements in the People's Republic of China." Ngai Decl., ¶ 5; Petition, ¶ 10. There were two significant revisions in the later agreements. First, Respondent Phyto Tech Corp. was added as a party and signatory to the later agreements. Second, the consideration to be paid under the later agreements was decreased from 46,000,000 RMB to 34,000,000 RMB. *See* Ngai Decl., Exs. 4, 6. To be clear, the agreements agreed to and signed by Respondent Phyto Tech Corp., and approved by the Chinese government, provided for consideration of 34,000,000 RMB, not 46,000,000 RMB. *Id.*

With respect to the revised and lowered consideration in the second two agreements, the reason for this change from Respondent Phyto Tech Corp.'s perspective was to account for the value of the inventory to be received. *See* Declaration of Kaiqi Wang ("Wang Decl."), p. 6; Declaration of Lei Shi ("Shi Decl."), p. 1 (explaining issues and problems with inventory to be assigned to Phyto Tech Corp. under the February 6, 2015 and March 5, 2015 agreements). Specifically, Teejoy had over 10,000,000 RMB worth of inventory that could not be used for quality control reasons and, accordingly, was not transferred to Phyto Tech Corp. and has stayed

in the possession of Teejoy. Shi Decl., ¶¶ 3-4; *see also* Wang Decl., ¶ 2c (chart comparing the terms of the different agreements).

Petitioners seek to ignore – both in arbitration and in this Court – the reduction in consideration agreed to by the parties in the February 6, 2015 and March 5, 2015 agreements as well as the reason why the inventory problems made that price reduction necessary and reasonable. During the arbitration, the panel erred repeatedly as it proceeded with arbitration under the February 5, 2015 agreement even though Phyto Tech Corp. was not a party to the agreement, failed to require proper notice to Phyto Tech Corp., refused motions for signature verification, refused cross-examination on key issues and impermissibly relied on unverified e-mail messages from an individual named Shilu Wang. Wang Decl., ¶ 4. Reliance on the Wang e-mails without verification or cross-examination was particularly unfair given that Petitioner Dezheng Lv owned and controlled the domain and server from which the disputed e-mails were purportedly sent. *Id.,* ¶ 4(c).

In the end, the arbitration panel apparently took the pricing from the February 5, 2015 agreement, added Phyto Tech as a party after the fact and ignored the both the fact that the February 5, 2015 agreement was never submitted to, much less approved by, the applicable Chinese authorities and also ignored the fact that the parties all voluntarily agreed to a price reduction from 46,000,000 RMB to 34,000,000 RMB when they entered into a "revised and re-executed" agreement on February 6, 2015. *Id.,* ¶ 4(d).

Given these undisputed facts, confirmation of the award would violate applicable law. Here is the applicable law.

### III. APPLICABLE LAW

The authority of United States District Courts to order confirmation of foreign arbitration awards is governed by the New York Convention and federal law implementing the Convention, 9 U.S.C. sections 201-208. *Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Sys., Inc.*, 665 F.3d 1091, 1095 (9th Cir. 2011). In order for the New York Convention to apply, and provide a basis for federal subject matter jurisdiction, the agreement to arbitrate that is the basis for the award must be "in writing," which is defined to

mean "in an arbitral clause in a contract or arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." New York Convention, Art. II.

When it applies, the New York Convention contains seven enumerated reasons in Article V why "recognition and enforcement of the award may be refused." *Id*. These defenses include:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the

public policy of that country."

New York Convention, Art. V, quoted in *Cubic Defense*, 665 F.3d at 1096 n.2.

## IV. ARGUMENT

As a preliminary matter, Petitioners cannot invoke this Court's jurisdiction pursuant to the New York Convention because the arbitral award that Petitioners seek to enforce is "based on the arbitration article under the *Shareholding Assignment Agreement* made and signed on February 5, 2015 . . . ." Ngai Decl., Ex. 12, p. 1. Respondent Phyto Tech was not a party to the February 5, 2015 agreement and did not sign it. *See* Ngai Decl., Ex. 2, p. 1 (listing parties as Petitioners Liu Luwei and Lv Dezheng and "Domestic or Foreign-funded Enterprise controlled actually by STEVEN CHEN").

Pursuant to Article II of the New York Convention, the Convention applies only where the arbitral award to be confirmed arises of an agreement to arbitrate in writing "in an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." The agreement to arbitrate in the February 5, 2015 agreement fails to meet either of these criteria because Phyto Tech was not a party and did not sign that agreement and because there is no evidence that the arbitration agreement was formed separately "in an exchange of letters or telegrams." New York Convention, Art. II.

Because Petitioners have failed to establish the applicability of the New York Convention to this dispute, they have failed to establish this Court's subject matter jurisdiction to render the relief sought and this action should be dismissed. *See Sen Mar, Inc., v Tiger Petroleum Corp.,* 774 F. Supp. 879 (S.D.N.Y. 1991); *Moscow Dynamo v. Oveckin,* 412 F. Supp. 2d 24 (D.D.C. 2006).

Moreover, even were the Court to determine that the New York Convention does apply here to confer subject matter jurisdiction – and it should not – multiple defenses enumerated in Article V of the New York Convention would preclude the relief sought here.

<u>First</u>, it is an undisputed fact, admitted by Petitioners' own counsel, that the February 5, 2015 agreement did not comply with applicable Chinese law and was not submitted for the requisite governmental approvals. Ngai Decl., ¶ 5 ("The Agreement was revised and re-executed on February 6, 2015 and March 5, 2015 in order to comply with regulatory requirements in the

People's Republic of China."); Petition, ¶ 10 (same); *see also* Arbitration Award, p. 11 ("The Shareholding Assignment Agreement signed by the Respondent and two Claimants on February 5, 2015 was never submitted for examination and approval of authority in charge examination and approval from beginning to end.").

Under these circumstances, where Phyto Tech has demonstrated that it is undisputed that the February 5, 2015 agreement failed to comply with applicable Chinese law, enforcement of the arbitration award validating the February 5, 2015 agreement and its pricing would violate Article V(2)(b) of the New York Convention. As recognized by the drafters of the New York Convention, to enforce an agreement against an entity who is not a signed party to the agreement, or to enforce an un-approved agreement that clearly clashes with the Chinese law that the government must approve agreements relating to foreign-invested enterprises,[1] would violate the "most basic notions of morality and justice" under the United States laws and United States public policy and therefore enforcement shall be denied. *See Fotochrome, Inc., v, Copal Co.*, 517 F.2d 512, 516 (2d Cir. 1975). Therefore, the Petition must be denied.

<u>Second</u>, even if the New York Convention applies and enforcement would not violate Chinese public policy, enforcement should still be denied because procedural aspects of the underlying arbitration violate Article V(1)(b) and fundamental notions of due process. These errors occurred because Respondent "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." New York Convention, Art. V(1)(b).

Specifically, Phyto Tech, a California Corporation and based in Rancho Santa Margarita, was only provided notice of the arbitration in Chinese. Wang Decl., ¶ 4. This notice was defective because over 90% of Phyto Tech's employees do not read and write Chinese and, accordingly, there a delay in the Company's ability to prepare for arbitration. *Id***.** Moreover,

---

[1] This policy is noted, in part, in Petitioners' own submission as follows: "According to the relevant laws and administrative regulations, a contract concluded by parties concerned during the establishment and alteration of a foreign-invested enterprise shall become effective upon approval by examination and approval authority for foreign-invested enterprises; <u>without the approval, the people's court shall determine that such contract has not come into effect.</u>" Arbitration Award, pp. 11-12 *citing* Paragraph (1) of the Article 1 of the *Provisions of the Supreme People's Court on Various Issues Concerning the Trial of Cases Involving Disputes Relating to Foreign Capital Enterprises* (emphasis added).

Case No.: 18-cv-02174
8

additional irregularities in the process both effectively rendered Phyto Tech unable to present its case in further violation of Article V(1)(b) and violated due process. *Id.* These issues include the arbitration panel's refusal to let Respondents receive signature verification with respect to the February 5, 2015 agreement, refusal to permit cross-examination with respect to the February 5, 2015 agreement, and improperly reliance on unverified e-mails from Shilu Wang. *Id.* The Wang e-mails should never have been considered absent cross-examination because Wang was not an authorized representative of Phyto Tech, his e-mails were never authenticated and neither Phyto Tech, nor Teejoy, had control over the domain (www.tee-joy.com) and server associated with these unverified emails. *Id.* Cumulatively, these errors led the arbitration panel to unlawfully adopt and purport to enforce the February 5, 2015 agreement.

In the end, the facts before this Court reveal that the arbitration panel has apparently refused to determine which of the agreements – February 5, 2015, February 6, 2015 or March 5, 2015 was legal and binding on the parties to this action – and, instead, has cherry picked different elements of the various agreements to impermissibly concoct a new "agreement" that was never reached by the parties. This decision of the panel to manufacture and purport to order compliance with a new agreement rather than determining which of the three existing agreements was valid and enforceable, if any, "contains decisions on matters beyond the scope of the submission to arbitration" and, accordingly, violates Article (1)(c) of the New York Convention.

Specifically, for all the reasons set forth above, this Court need not and should not enforce an "agreement" or award that on its face takes the date and pricing from the February 5, 2015 agreement and impermissibly fuses it with the parties and government approval of the February 6, 2015 and March 5, 2015 agreements. Moreover, this process employed by the panel of combining different elements from separate documents into a single new contract is not acceptable in any country recognizing modern contract law, such as China and the United States, and violates the "most basic notions of morality and justice" and, thus, Article (2)(b) of the New York Convention. This is particularly true given that the express terms of the February 5, 2015 agreement expressly contemplate "amendment" of that agreement in writing (Section 16.4) and

Petitioner's own counsel admits that the February 5, 2015 agreement was "revised and re-executed." Ngai Decl., ¶ 5. For this reason as well, the February 5, 2015 agreement and pricing cannot control over the terms and pricing of the two later agreements dated February 6, 2015 and March 5, 2015.

## V.  CONCLUSION

For all of these reasons, Respondent Phyto Tech Corporation respectfully requests that the Court find that there is no jurisdiction or basis for the Court to grant the Petition because Respondent Phyto Tech was neither a party, nor a signatory, to the February 5, 2015 agreement which is the basis for the disputed award and, as a consequence, the New York Convention cannot provide a basis for enforcement of the disputed award in the United States and this Court is without authority to enforce the disputed award.

Alternatively, should the Court find the jurisdiction under the New York Convention, Respondent Phyto Tech respectfully requests that enforcement be denied for all of the reasons set forth above including, but not limited to, the fact that the February 5, 2015 agreement which is the basis for the disputed aware was "revised and re-executed" to comply with the law of People's Republic of China and that enforcement of the February 5, 2015 agreement and award would clash with Chinese law and because the Chinese arbitration violated Phyto Tech's right to due process in multiple ways.

Alternatively, to the extent the Court cannot determine whether the award should be confirmed on the present record, Respondent Phyto Tech respectfully requests that the Court order a summary factual hearing and that the parties be permitted to provide further factual evidence to the Court. Phyto Tech also believes that the Court could order limited discovery with respect to disputed issues.

Finally, at a minimum, Respondent Phyto Tech respectfully requests that it be permitted oral argument with respect to the pending Petition so that it may respond to questions and concerns that the Court may have regarding potential enforcement of the award.

This dispute involves an amount of money that is material to Respondent Phyto Tech and Phyto Tech appreciates the consideration of the Court regarding the arguments and materials submitted.

Respectfully Submitted,

DATED: April 26, 2018              /s/  Steven S. Kaufhold
                                   Steven S. Kaufhold